1  R. Travis Jameson, WSBA No. 45715
   Email: travis@stritmatter.com
2  Stritmatter Kessler Whelan
   200 2nd Ave. W
3  Seattle, WA 98119f
   206-448-1777
4

5

6                                                          Hon. Benjamin H. Settle

7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                            AT TACOMA

9

10 MARY E. BENTON, individually; LINDA J.
   MCPHERSON, individually, DORINDA M.
   OTERO, individually and collectively on
11 behalf of all others similarly situated,          NO. 3:13-cv-05998-BHS

12              Plaintiffs,                           PLAINTIFF'S MOTION FOR
                                                     PRELIMINARY APPROVAL OF
         v.                                          CLASS ACTION SETTLEMENT
13
   KAISER PERMANENTE, a business entity,
14 exact form unknown; KAISER                         NOTE ON MOTION CALENDAR:
   FOUNDATION HOSPITALS, a California                FEBRUARY 27, 2015
15 corporation; KAISER FOUNDATION
   HEALTH PLAN, INC. D.B.A. KAISER
16 FOUNDATION HEALTH PLAN, a
   California corporation KAISER
17 FOUNDATION HEALTH PLAN OF THE
   NORTHWEST, an Oregon corporation;
18 KAISER PERMANENTE HEALTH
   ALTERNATIVES, an Oregon corporation;
19 NORTHWEST PERMANENTE, P.C., an
   Oregon professional corporation; ROE
20 CORPORATIONS 1 through 100, inclusive.

                Defendants.
21

22

23

24 PLAINTIFF'S MOTION FOR PRELIMINARY
   APPROVAL OF CLASS ACTION SETTLEMENT
   Case No. 3:13-cv-05998-BHS - 1

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

## 1. Introduction

After months of negotiation, including ten hours with a nationally-known mediator, the parties have settled this case. Defendants ("Kaiser") will create a $4 million fund to resolve all claims in this case and a related case pending in the District of Oregon, with administration of the settlement occurring under the supervision of this Court. The Stipulation Re: Class Action Settlement and Release of Claims (the "Settlement") is attached to the declaration of Travis Jameson as (Exhibit A). The Settlement is fair and reasonable and serves the best interests of the settlement class members. (Declaration of Travis Jameson at p.5 ¶14-15; see also Declarations of Brad Moore at p.3 ¶9; Declaration of Linda McPherson at p.2 ¶6; Declaration of Mary Benton at p.2 ¶6; Declaration of Dorinda Otero at p.3 ¶7; Declaration of Barbara Kelley at p.3 ¶7; Declaration of William Pearse at p.3 ¶7; and Declaration of Mark Griffin at p.2 ¶4.)

Plaintiffs therefore request that this Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed settlement class; (3) appoint as class counsel the law firm of Stritmatter Kessler Whelan; (4) appoint Mary Benton, Linda McPherson, and Dorinda Otero as representatives of the class; (5) preliminarily approve the award of attorney fees and enhanced awards; (6) approve the proposed notice plan and class notice forms; (7) appoint KCC LLC to serve as claims administrator ("Claims Admin"); (8) approve the limited disclosure of health information to the Claims Admin in the manner described herein; and (9) schedule the final fairness hearing and related dates.

## 2. Facts

### A. Relevant Factual Background.

Plaintiffs have alleged that in April of 2013, Kaiser implemented a program to test its Oregon and Washington members for HIV once in their lifetime, and began by ordering HIV tests for Northwest region members between the ages of 50 to 65. Plaintiffs allege that Kaiser failed to communicate this new protocol to its members before administering the tests, which

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 2

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

deprived them of an opportunity to opt-out of the program and decline the test. Plaintiffs allege that they and the putative class were tested for HIV without their knowledge or consent.

Through depositions, interrogatories, and document discovery, plaintiffs determined that Kaiser began testing patients on April 16, 2013 and ended the program on May 6, 2013, after receiving complaints from Kaiser-members who claimed that they learned about their tests when they were mailed the results. Kaiser tested 6,180 members pursuant to the program. Of that amount, 5,346 individuals were tested in Oregon, and 834 individuals were tested in Washington. (Declaration of Robert Unitan, M.D. at p.2 ¶3 and p.3 ¶¶7-8.) Plaintiffs allege that after the program ended, Kaiser sent "apology" letters to these members, stating that it may have tested them without their knowledge.

During discovery, Kaiser claimed that it informed many of its members about testing, including telling primary care providers and phlebotomists about the program and instructing them to inform members about the tests before they occurred. Plaintiffs contend, however that Kaiser knew or should have known that some members would present to the laboratory without first seeing a primary care provider and would not be informed by their phlebotomist. Plaintiffs also learned in discovery that there was a one week delay in placing information about the HIV test on a handout that was to be handed to all members after visiting the primary care provider. Kaiser acknowledges that it received complaints from members who claim that they were tested without their knowledge, including plaintiffs. Kaiser claims that upon receiving these complaints, it then took measures to ensure that members knew and had the opportunity to opt out of the tests.

For the purpose of this settlement only, the parties agreed that Kaiser began taking these steps on April 23, 2013. Plaintiffs believe members continued to be tested without their knowledge between April 23 and May 6; Kaiser believes that many members were provided with disclosures and the opportunity to opt-out between April 23 and May 6.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 3

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

STRITMATTER KESSLER WHELAN

### 1.    The Washington Action.

Plaintiffs originally brought this action in Washington state court.  Defendants removed to this Court under the Class Action Fairness Act.  Plaintiffs then filed an amended complaint that sought to certify a class defined as: "All persons subjected to unauthorized and unconsented to HIV testing by [Kaiser], and its subsidiaries between April 11, 2013 and a yet undetermined period."

Plaintiffs alleged that Kaiser violated RCW 70.24.330, which provides that no person may undergo HIV testing without the person's consent.  WAC 246-100-207 further provides that any person ordering or prescribing an HIV test for another individual shall obtain the consent of the individual, separately or as part of the consent for a battery of other routine tests, provided that the individual is (1) specifically informed verbally or in writing that a test for HIV is included and (2) offered an opportunity to ask questions and decline testing.  RCW 70.24.084 provides that any person "aggrieved by a violation of this chapter" may recover $1,000 for each negligent violation, $10,000 for each reckless violation, and reasonable attorneys' fees and costs.

### 2.    The Oregon Action.

On November 27, 2013, different plaintiffs – but also represented by proposed class counsel – filed a related action in the District of Oregon, captioned *Kelley, et. al. v. Kaiser Permanente et al,* U.S. District Court, District of Oregon, Case No. 3:13-cv-02120-BR (the "Oregon action"). The Oregon action arises out of the same HIV testing program, but the putative class is defined as: "All persons in the State of Oregon who, from on or about April 11, 2013 to on or about May 5, 2013, were subjected to HIV testing by Kaiser Permanente and/or its affiliated companies without first being notified that the HIV test was to occur and without being provided the opportunity to decline the HIV testing."  The plaintiffs asserted a claim under Or. Rev. Stat. § 433.045, which requires a health care provider, before subjecting an individual to an HIV test, to notify the individual being tested and allow the individual being tested the

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 4

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

opportunity to decline the test. Or. Rev. Stat. § 433.045(2). The notification and opportunity to decline testing may be "verbal or in writing, and may be contained in a general medical consent form." *Id.* § 433.045(3).

The Oregon plaintiffs also asserted a claim for "invasion of privacy," an intentional tort. The elements of the "invasion of privacy" tort are: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person. *Mauri v. Smith*, 324 Or. 476, 483, 929 P.2d 307, 310 (1996). The plaintiffs sought actual damages of $1,000 each, plus punitive damages.

Kaiser moved to dismiss or stay the Oregon action under the "first to file" doctrine, on the ground that the class definition in this case encompassed the proposed class in the Oregon action, and the conduct at issue was the same. *See Pacesetter Systems, Inc. v. Medtronic*, 678 F.2d 93, 94-95 (9th Cir. 1982) (noting court may dismiss or stay later-filed action if brought by similar parties to previously filed action when cases involve similar issues). The Oregon court agreed, and stayed the action "until the *Benton* action has progressed sufficiently to determine whether this action will have a basis to proceed that does not duplicate the *Benton* matter." The Oregon court directed the parties to file joint status reports every 90 days. The parties have reported this Settlement to the Oregon court, and have indicated their intent to implement the settlement under the supervision of this Court.

### B.   Plaintiffs' Counsel Thoroughly Investigated the Claims.

Plaintiffs' attorneys have extensive experience investigating, litigating, certifying, and resolving class action cases. (Declarations of Jameson p.2 ¶4; Moore p.2 ¶3; & Griffin p.2 ¶2.) Before settling this action, Plaintiffs' counsel thoroughly investigated the claims of the proposed class. Plaintiffs' investigation included, among other tasks, legal research relating to HIV testing without consent, interviewing numerous Kaiser-members to develop a clear sense of the goals, concerns and objectives of these members so as to best advocate on their behalf as a class.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 5

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

Plaintiffs' attorneys consulted with and retained nationally respected experts in the areas of Public Health/Hospital Administration, Medical Ethics, and Infectious Diseases. (Declaration of Travis Jameson at Exhibit "B" "C" and "D"); consulted the Washington State Department of Health and the State of Oregon Public Health Division.

Plaintiffs researched Oregon and Washington legislative history concerning HIV testing statutes and consulted with the Oregon ACLU. Plaintiffs' attorneys further conducted focus groups designed to gage the conduct of Kaiser and potential damages range/value. (Declaration of Travis Jameson at p.3 ¶¶7-9; p.4 ¶¶10-12; and p.5 ¶14.) Plaintiffs also engaged in extensive discovery after the lawsuit was filed. Plaintiffs received answers to 21 interrogatories on the details of the HIV testing program and the batch ordering process. Plaintiffs received and reviewed thousands of documents on the HIV testing program, the batch ordering process, and the particular circumstances of the named Plaintiffs. Plaintiffs conducted multiple depositions, including a Rule 30(b)(6) deposition and other depositions of the primary architects of the HIV testing program.

On July 16, 2014, the parties attended mediation with David Rotman, a nationally known class action mediator in San Francisco. This was approximately one month before a motion for class certification was due under this Court's scheduling order. After ten hours of arms-length negotiation, the parties signed a memorandum of understanding ("MOU") containing the contours of a global settlement for this action and the Oregon action. (Jameson Dec., Ex N.) Attached with the declaration of Travis Jameson is a declaration from Mr. Rotman, stating his observation that counsel for the parties negotiated vigorously on behalf of their clients, the MOU was reasonable given the strengths and weaknesses of the claims, and that he observed nothing that would lead him to believe the MOU was the product of collusion or fraud. (Jameson Dec., Ex L. at p.2 ¶6.) Over the next two and half months, the parties continued to work out the details

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 6

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

STRITMATTER KESSLER WHELAN

of the Settlement, including the specific amounts to be distributed to class members. All parties signed the Agreement by November 24, 2014.

### C. The Settlement.

The full agreement of the parties is described in the Settlement attached as Exhibit A to the declaration of Travis Jameson. The following is a summary of the Settlement Agreement's terms:

#### 1. The Proposed Class.

The proposed class is defined as:

> All Kaiser patients for whom HIV tests were batch-ordered, and who were tested for HIV in Washington or Oregon, between and including April 16, 2013 and May 6, 2013.

> Excluded from the class are Defendants, Defendants' legal representatives, assignees and successors, the judges assigned to this case and in the *Kelley* case, the judges' staff, and any member of the judges' immediate family.

The "Settlement Class" is defined as all class members who do not opt out, from the Settlement.

#### 2. Settlement Relief

Kaiser will establish a gross settlement fund of $4 million. Plaintiff will move this Court for attorney fees in the amount of 25% of the gross settlement fund, $10,000 incentive awards for the three named plaintiffs in the Washington action and the two named plaintiffs in the Oregon action, and claims administration expenses expected to be approximately $75,000.

The remaining $2,875,000 is the "net settlement fund" from which distributions to eligible class settlement class members are made. Settlement class members who were tested in Washington, and who state in a claim form that they were tested for HIV without their knowledge, are eligible for a distribution. Settlement class members who were tested in Oregon, and who state in a claim form that (1) they were tested for HIV without their knowledge and (2)

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 7

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

STRITMATTER KESSLER WHELAN

they would have opted out had they known about it, are eligible for a distribution. Kaiser may challenge claims in one way: if there is a notation in the patients' medical chart stating that the patient was informed about the HIV test, then the Claims Admin must deny the claim.

Distributions are made as follows: (1) eligible class members who were tested in Washington between and including April 16, 2013 and April 23, 2013 will receive $1,448.48 each; (2) eligible class members who were tested in Washington between and including April 24, 2013 and May 6, 2013 will receive $788.13 each; (3) eligible class member who were tested in Oregon between and including April 16, 2013 and April 23, 2013 will receive $539.94 each; (4) eligible class members who were tested in Oregon between and including April 24, 2013 to May 6, 2013 will receive $310.10 each. Any money left in the net settlement fund after all claims are paid reverts to Kaiser.[1]

### 3.     The Notice and Claims Process.

The Settlement calls for the following notice and claim process. Kaiser has the names and addresses of all class members. All of these individuals already received a letter from Kaiser, shortly after the HIV-testing program ended, responding to complaints about the HIV test. Kaiser will provide these names and addresses to the Claims Admin, who will send a notice packet to each class member by first class mail. The notice packet will include a Notice of Pendency of Class Action (Jameson Dec., at 0040-44 - Exhibit B to the Settlement); a Claim Form (Jameson Dec., at 0046-47 - Exhibit C to the Settlement); a Request for Exclusion form (Jameson Dec., at 0049 - Exhibit D to the Settlement); and a self-addressed stamped envelope. The Claims Admin will use reasonable skip tracing devices to verify the addresses of all class members, will investigate mailings returned to sender, and will send a reminder post card to all class members

---

1  The distribution amounts described in this motion are based on an estimated net settlement fund of $2,875,000.  If more than 6,180 class members are identified, or there is more or less money in the fund after payment of approved costs and fees, the distribution amounts will change according to a formula that is described in paragraphs 4.4.1.1 and 4.4.1.2, respectively, of the Settlement.   Attorney fees, costs and awards not approved by this Court become part of the Net Settlement Fund.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 8

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

after thirty days. Included in the Notice will be an email address for a website that will contain the Settlement and other relevant court documents.

Class members will have forty-five days from the date of initial mailing to request to be excluded from the Settlement Class or submit a claim (the "Claims Period"). If 7.5% of class members opt-out Kaiser can void the Settlement. Class members who do not opt out are part of the Settlement and must submit a Claim Form to be eligible for a distribution. The release applies to all class members who do not opt-out from the Settlement.

Kaiser has agreed to work with the Claims Admin to provide a personalized Claims Form for each class member, *i.e.*, a form that states the date and location of that member's HIV test. Class members who were tested in Washington must answer "yes" or "no" to one question: did Kaiser test you for HIV between and including April 16 and May 6 without informing you about the test? Class members who were tested in Oregon must answer "yes" or "no" to two questions: (1) did Kaiser test you for HIV between and including April 16 and May 6 without informing you about the test? And (2) if you answered "Yes" to Question One, if Kaiser had informed you about the HIV test, would you have declined it? Class members must sign the form and declare under penalty of perjury that their answers are accurate.

Class members who answered "Yes" to all applicable questions are eligible for a distribution. Kaiser then has 14 days after the expiration of the Claims Period to challenge claims by presenting evidence from the class members' medical file showing that they were informed about the HIV test. Kaiser may not challenge claims in any other way. Within six month of final judgment, the Claims Admin must pay all claims.

        **4.**      **Limited Disclosure of Protected Medical Information to Claims Administrator.**

The Settlement requires Kaiser to submit the names and addresses of all class members to the Claims Admin. It also allows Kaiser to challenge claims by submitting evidence to the

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 9

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

Claims Admin from a class member's medical file stating that they were told about the test. Kaiser will not disclose the names, addresses, or medical information about class members to plaintiffs' counsel without further order from this Court, and will not disclose the results of any HIV tests to the Claims Admin or anyone else.

Kaiser has a business associates agreement (BAA) with the Claims Admin that requires it to protect medical information in accordance with HIPAA regulations. Moreover, both the Notice and Claim Form inform class members that, by submitting a claim form, they authorize disclosure of this limited information to the Claims Admin for this limited purpose. Although HIPAA does not require court approval for this limited disclosure of protected health information to an entity with which Kaiser has a BAA, Oregon law on HIV testing provides:

> "a person may not disclose or be compelled to disclose the identity of any individual upon whom an HIV-related test is performed, or the results of such a test in a manner that permits identification of the subject of the test, except as required or permitted by federal law, the law of this state or any rule, including any authority rule considered necessary for public health or health care purposes, or as authorized by the individual whose blood is tested." Or. Rev. Stat. § 433.045(4).

The parties believe that the specific authorization provided in the Notice and Claim Form, combined with the BAA, is sufficient to satisfy both HIPAA and Oregon law for any claim challenges. It is less certain, however, whether Kaiser can disclose the "identity" of the class to the Claims Admin without specific authorization from this court. The Oregon statute allows Kaiser to do so if "permitted" by federal law, and HIPAA does permit such disclosure if there is a BAA in place.

In an abundance of caution, the parties request, as part of this motion, that the Court authorize disclosure of the identity of the individuals who were tested for HIV to the Claims Admin, as well as the information necessary for the challenge process, for the sole purpose of implementing this Settlement.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 10

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

## 5.    Class Release

Settlement class members release all claims arising out of the HIV testing program and any claims arising out of the same nucleus of operative facts as any of the claims asserted in the actions.

## ARGUMENT AND AUTHORITY

### 1.    This Court should Preliminarily Approve the Settlement

Pursuant to FRCP 23(e), class actions "may be settled, voluntarily dismissed, or compromised only with the court's approval." As a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *see also* 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002) (same, collecting cases).

The Manual for Complex Litigation (Fourth) (2004) § 21.63 ("MCL 4th") describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of the notice of the settlement to class members; and (3) a formal fairness and final settlement approval hearing. Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement and provisionally certifying the Settlement class.

### A. The Question for the Court is Whether the Settlement is Within the Range of Reasonableness for Final Approval.

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" for final approval. *R.H. v. Premera Blue Cross,* No. C13-97RAJ, 2014 WL 3867617, at *4 (W.D. Wash. Aug. 6,

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 11

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

2014). As this Court has observed, a motion for preliminary approval "requires the Court to consider whether (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Wilson v. Venture Fin. Grp., Inc.,* No. C09-5768BHS, 2011 WL 219692, at *2 (W.D. Wash. Jan. 24, 2011) (quotations omitted). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Arthur v. Sallie Mae, Inc.,* No. C10-0198JLR, 2012 WL 90101, at *9 (W.D. Wash. Jan. 10, 2012) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003)).

A "presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Hughes v. Microsoft Corp.,* No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at * 4 (N.D. Cal. Mar 18, 2013) (applying at preliminary approval a "presumption" of fairness to settlement that was "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). Even when considering <u>final approval</u> of a settlement, the Ninth Circuit has observed that "[p]arties represented by competent counsel are better position than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542–43 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length negotiations"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good faith, following arms-length and non-collusive negotiations").

The role of the Court is not to determine whether the settlement "could have been better" – it is to ensure only that the settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 12

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted).

**B. The Settlement Agreement Is the Product of Arm's-Length Negotiations After Sufficient Discovery by Experienced Counsel.**

The Settlement was the result of arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. (Declaration of Jameson at p.2 ¶4; p.3 ¶¶7-9; p.4 ¶¶10-12; and p.5 ¶14; Declaration of Moore at p.2 ¶3; and Declaration of Griffin p.2 ¶2.) Plaintiffs' counsel has substantial experience litigating and settling class actions and complex litigation. Their experience makes them well-suited to analyze the costs, risks and benefits of continued litigation in light of the legal and factual issues associated with class actions, as applied to the facts of this case.

Counsel did not make lightly the decision to settle before certification. It engaged in substantial pre-filing investigation of the facts and claims asserted in this case. It also conducted discovery, including depositions of the primary architects of the testing program, and spent a considerable amount of time reviewing documents, interviewing witnesses, and analyzing the legal issues implicated by the claims in the two actions. (*Id.*) Counsel hired and consulted with experts, and spent numerous additional hours analyzing the risks and benefits of settling now or proceeding to class certification. (Declaration of Jameson at p.2 ¶4; p.3 ¶¶7-9; p.4 ¶¶10-12.)

The parties then engaged a respected, experienced neutral class action mediator, who has submitted a declaration attesting that the memorandum of understanding entered into by the parties was the result of arms-length bargaining by experienced, informed counsel. After the parties signed an MOU, they spent an additional two months working out the final details of the Settlement. The end result is a thoughtful settlement that takes into account the evidence and the legal claims in this case, and contains a substantial recovery for all class members who state a claim with little effort. There is nothing in the record that should cause the Court concern that the Settlement was the product of "fraud or overreaching by, or collusion between, the

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 13

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

negotiating parties." *Hanlon*, 150 F.3d at 1027.  A presumption of fairness should attach to the Settlement.

### C. The Settlement Provides Substantial Relief for Settlement Class Members and Treats Settlement Class Members Fairly.

The Settlement is fair on its face. Kaiser has agreed to establish a $4,000,000 settlement fund.  Of that amount, the parties expect that $2,875,000 will be available to pay claims. The net settlement fund is enough to ensure that if every class member asserts a valid claim, there is sufficient money to give each a significant recovery.  Class members need do little more than check one or two boxes on a claim form to be eligible for a substantial distribution. Class members who were tested in Washington will receive either $1,448.48 or $788.13.  Under the statutory scheme, this is more than 100% or 79% of any potential recovery assuming negligent conduct.  As explained above, class members who were tested before April 24, 2013 receive a larger distribution based on the negotiated settlement value of those claims in light of the different evidence that exists for claims before and after that date.

Class members who were tested in Oregon will receive either $539.94 or $310.10. Because there are no statutory damages in Oregon, it is impossible to calculate the ratio between the settlement amount and the recoverable damages, but the Oregon plaintiffs sought $1,000 in their complaint. The Settlement is either 53% or 31% of that amount.  ***This is not a "coupon" settlement***.  (Jameson Declaration, at p.5 ¶15.)  *E.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement amounting to 30 percent of the damages estimated by the class expert; court noted that even if the plaintiffs were entitled to treble damages that settlement would be approximately 10 percent of the estimated damages); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement estimated to be worth between 1/6 to 1/2 the plaintiffs' estimated loss); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement amounting to nine percent of estimated total damages).

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 14

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

STRITMATTER KESSLER WHELAN

The Settlement groups class members into four groups, based on the place and date of test. *See In re Phenylpropanolamine Products Liability Litigation,* 227 F.R.D. 553 (W.D. Wash 2004) (noting that in some settlements "disparate treatment of claims is obviously necessary if claims are to be valued and a settlement is to occur"). Class members have alleged claims under Oregon law and Washington law, which are different on HIV testing. Washington law allows statutory damages while Oregon law requires proof of actual damages. Oregon "informed consent" law includes a "subjective" causation requirement, while Washington's does not.[2] The Settlement thus takes into account the differences in the settlement value of class members' claims depending on whether the class member was tested in Washington or Oregon.

The Settlement also places class members into two groups based on the date of test. This is because Washington law permits recovery of $10,000 for reckless violations of the HIV testing statute, and $1,000 for negligent violations. Oregon law does not contain a statutory damages provision, but it does allow for punitive damages, which are prohibited in Washington. While Plaintiffs believe that they can prove recklessness for all class members if this case proceeds to trial, for settlement purposes they agreed that the evidence of recklessness is different based on the date of the test. The parties thus negotiated a date – April 24, 2013 – as the date for assigning different values to claims. On that date the evidence arguably shows that Kaiser put additional protocols in place to make sure members were informed about the test.

Thus, groups of claims are treated differently, but in a manner that is fair, logical, and consistent with counsel's view of the strength of the claims. (Declaration of Travis Jameson at p.5 ¶14-15; see also Declarations of Brad Moore at p.3 ¶9; (Jameson Dec., Ex. H - Declaration of Linda McPherson at p.2 ¶6; Ex. G - Declaration of Mary Benton at p.2 ¶6; Ex. I - Declaration of Dorinda Otero at p.3 ¶7; Ex. K - Declaration of Barbara Kelley at p.3 ¶7; Ex. J - Declaration of William Pearse at p.3 ¶7; and Declaration of Mark Griffin at p.2 ¶4.)

---

[2] Plaintiffs agree that this is the operative causation standard in Oregon for purpose of this Settlement only.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 15

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

**D. The Settlement Agreement Is Fair and Reasonable in Light of the Alleged Claims and Defenses**

Plaintiffs are confident in the strength of their case, but also pragmatic in their awareness of the defenses available to Defendants and the inherent risks and delays of litigation.

**1.    Class Certification.**

As shown below, this case is suitable for class treatment because all class members had HIV tests batch ordered pursuant to the same HIV testing program, which gives rise to common issues of law and fact.  Kaiser has argued, however, that class certification is unlikely because it is impossible to know which patients were tested over a class-wide basis.  There is evidence that providers and phlebotomists were told about the program and told to inform patients before testing.  Moreover, Oregon and Washington law permit verbal notification of an HIV test, and both are "opt-out" schemes that do not require documented, informed consent procedures. Plaintiffs therefore expected Kaiser to argue at the class certification stage that it would be impossible to know whether any of the 6,180 patients were tested without their knowledge without speaking with each patient, provider, and phlebotomist, reviewing each medical chart, and then having a fact-finder decide whether the statutes were violated.  Kaiser has also stated that Oregon class members cannot prove "subjective" causation or actual damages over a class-wide basis.

Plaintiffs do not concede that these arguments are factually or legally correct.  A pragmatic risk analysis, however, must take into account the potential difficulties in getting classes certified in this case and the Oregon case.  *See Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (2014) (approving settlement after determining that class certification would be difficult).  Without class certification, the overwhelming majority of class members will receive no recovery.  The Settlement provides a simple mechanism for all patients with valid claims to receive a significant recovery.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 16

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

## 2. Negligence versus Recklessness.

In deciding whether to settle before class certification, plaintiffs also considered that they expect Kaiser to dispute recklessness. Kaiser's deponents have claimed that their intention was to save lives. Kaiser claimed that the program was in response to a public health crisis, as described by the United States Preventative Services Task Force, which issued a recommendation that all individuals be tested once in their lifetime. Because of the long incubation period and a "stigma" associated with HIV testing, approximately 25% of individuals infected with the disease do not know they have it. Kaiser claimed in discovery that they instituted the testing program because early detection greatly increases the efficacy of treatment and decreases the rate of new infections.

Kaiser has also claimed that it began the program only after both Oregon and Washington became "opt-out" states for HIV testing in response to this same crisis, meaning in both states only knowledge and an opportunity to opt out is required for HIV testing, not formal "informed consent" that applies to medical procedures. Kaiser asserted that its intent was to inform its members, and that it took several affirmative steps to do so, including by telling its medical providers and phlebotomists to inform patients about the program. Kaiser states that when it learned of complaints, it quickly mobilized a team to reconfirm that members were informed, including putting information about the test on the patient handout, sending additional communications to primary care physicians and laboratory employees, and distributing "opt out" forms to members who presented to the laboratory for an HIV test. The program lasted approximately three weeks. Kaiser sent all individuals tested (meaning all class members) a letter informing them about the test and its purpose, and the architect of the program personally called each person who complained to explain what happened.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 17

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

It is ultimately a fact-question whether this qualifies as negligence versus recklessness, but prudent lawyering requires Plaintiffs to factor this evidence and defenses into its decision to settle pre-certification, and how to structure that settlement.

**E.      The Reverter Clause and Clear Sailing Provision Are Fair.**

The Settlement contains a "reverter" clause and "clear sailing" provision, meaning that money not distributed to class members from the settlement fund reverts to Kaiser, and Kaiser has agreed not to challenge plaintiffs' motion for attorney fees.  Any attorney fees not awarded, however, becomes part of the net settlement fund for distribution to class member through a re-allocation formula described in the Settlement.

Plaintiffs bring this to the Court's attention because some courts have stated that reverter clauses and clear sailing provisions can be a "subtle sign" of collusion between the defendant and plaintiffs' attorneys.  *Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).  Neither are *per se* invalid, however, and they are not a sign of collusion in this case. *See generally, Tontine or Takeback: Reversion Provisions in Class Action Settlement Agreements,* 62 Bus. Law. 971, 973 (May 2007) (stating "courts routinely approve reversion provisions"). The Ninth Circuit, in fact, has expressly stated that courts should not reject settlements with reverter clauses when a settlement is fair under the circumstances. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 949-50 (remanding settlement to district court to conduct appropriate analysis, but making clear that court could approve settlement with reverter clause).

In its most recent pronouncement on the issue, the Ninth Circuit held that a district court did not abuse it discretion when it approved a class action settlement with a reverter clause, after balancing the "reversion clause against the overall strength of the settlement." *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918 (2014).  The court noted that a reverter clause made sense in that case because class certification would be difficult, there was a significant benefit to the class

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 18

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

STRITMATTER KESSLER WHELAN

given the risks of litigation, and the attorneys' fee award was reasonable so the reverter clause could not have been negotiated in exchange for a clear sailing provision. *Id.*; *see also McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009) (approving settlement that included a reverter clause and a clear sailing provision because the claimants would receive "full damages"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 230-31 (S.D. Ill. 2001) ("As an initial matter, the objection to the reversion is ill-founded given the ability of most Settlement Class Members to receive nearly 100% recoveries. To give Settlement Class Members more than the amounts they were allegedly damaged would constitute an unfair windfall.")

The Settlement, viewed in its entirety, is within the range of reasonableness sufficient for preliminary approval. Plaintiffs have received a significant financial benefit for the class. Their attorneys have capped their fees and costs at 25% of the gross settlement fund. Plaintiffs will file a motion specifically regarding its fees and costs, but for purpose of preliminary approval, it is notable that the Ninth Circuit has "established 25% of the common fund as the 'benchmark' award for attorney fees." *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993). Because the attorney fees are at the benchmark, and un-awarded attorney fees revert to the class, the reverter clause/clear sailing provision in this case cannot be evidence of "collusion."

The reverter clause makes sense for this Settlement. To resolve issues about the exact number of people tested without their knowledge, the parties agreed that Kaiser would set up a fund sufficient to make significant payments to every party with a valid claim as determined through a simplified, abbreviated claims process. There is enough money in the fund to pay every person tested if they all can make a valid claim. Kaiser also gave up its right to contest (1) class certification, (2) assertions from class members that they were tested without their knowledge, unless there is a specific notation in their chart so stating; (3) subjective causation in Oregon; and (4) actual damages in Oregon. This is significant because documented "informed

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 19

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

consent" is not required in Oregon or Washington and verbal notification is permitted. It also means that Kaiser cannot challenge claims based on notification that might have come from a phlebotomist, because that would not result in a notation in a medical chart.

This is not a coupon settlement where there is little incentive for class members to assert claims. Given the amount of money that Kaiser has agreed to pay, the ease in claim submission, and the number of defenses waived by Kaiser if this Settlement is approved, it is reasonable to assume that class members who do not return a claim form will not do so because they do not have a claim. Class members with valid claims will receive close to full compensation assuming negligent conduct. Because of the overall fairness of the settlement, this is an appropriate circumstance for a reverter.

### F.    The Attorney Fees and Enhancement Awards Are Reasonable.

Plaintiff will file a motion specifically addressing attorney fees and the enhancement awards, but the amounts are within the range of reasonableness for purposes of preliminary approval. The Ninth Circuit has "established 25% of the common fund as the 'benchmark' award for attorney fees." *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993). Moreover, a $10,000 enhanced award is fair, adequate, and reasonable.

"Named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton,* 327 F.3d at 977. The district court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id.* at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* Courts have generally found that incentive payments in the amounts suggested are reasonable. *See, e.g., Pelletz v. Weyerhaeuser Co.,* 592 F.Supp.2d 1322, 1330 (W.D.Wash.2009) (approving incentive awards of $7,500 each to the four

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 20

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

class representatives of a class of between 110,000 and 140,000 members in an settlement for an unspecified amount and in which attorneys' fees were capped at $1.75 million); *Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau,* No. C 07–00362, 2009 WL 3562871 (N.D.Cal. Oct. 27, 2009) (awarding incentive payment of $7,500 to class representative of a class of 8,057 members in a settlement of $1.5 million).

In the instant case, the incentive payments constitute a significantly smaller portion of the overall settlement. Incentive awards of $10,000, as proposed, to each class representative represents 0.0025 of the gross settlement fund individually and combined the incented awards represent only 0.0125 of the gross settlement found. The proposed incentive awards are reasonable given how much time and energy has been given to this case, the willingness to go public regarding private and sensitive personal medical information, and the advancement of the public interest in ensuring HIV testing is truly voluntary, as well as, the superior result they helped achieve for the class as a whole. <u>See</u> *Jacobs,* 2009 WL 3562871, at *5 (total incentive payment did not exceed .5% of the total settlement); *Morales v. Stevco, Inc.,* No. 1:09–cv–00704 AWI JLT, 2012 WL 1790371, *19 (E.D.Cal. May 16, 2012) (total incentive payment of $7,500 did not exceed .81% of total settlement); *see also In re Mego Fin. Corp.,* 213 F.3d 454, 463 (9th Cir.2000) (total incentive payments of $5,000 to each of two class representatives did not exceed .56% of total settlement); Wright, 259 F.R.D. at 477 (total incentive payment of $5,000 did not exceed .2% of total settlement); but *see Alvarado v. Nederend,* No. 1:08–cv–01099 OWW DLB, 2011 WL 1883188, *11 (E.D.Cal. May 17, 2011) (incentive payment of $7,500 to each plaintiff did not exceed 1.5%, and total incentive payment of $35,000 to the five plaintiffs neared 7.5% of total settlement).

The criteria courts consider in determining whether to make an incentive award generally include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 21

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *See* Richard Greenfield, "Rewarding the Class Representative: An Idea Whose Time Has Come," 9 *Class Action Reports* 4 (1986). Plaintiffs' have remained active and willing class representatives throughout this case. (Jameson Dec. Ex: G; H; I; J; & K Declarations of Mary Benton; Lynn McPherson; Dorinda Otero; William Pearse; and Barbara Kelley.) These efforts have included; but are not limited to, willingness to be publicly identified concerning personal and sensitive medical issues; opening up their medical histories, enduring vigorous examination of the personal values and beliefs by skilled defense counsel; hours spent in participating in discovery, sitting for deposition, telephone calls with Plaintiff counsel, preparing declarations and responding to the needs of prosecuting the case, expressing their beliefs during focus groups to strangers, and each has expressed a desire to personally appear with Plaintiff counsel at the preliminary approval hearing before this honorable Court.

In this case because the named class members committed to enduring public disclosure of private, potentially stigmatizing and sensitive medical information and exhibited a willingness to assist in the coordination of the lawsuit, have their medical history, sexual history and value systems questioned and examined under rigorous questioning by skilled defense attorneys. They committed to giving of their time and efforts to advance the lawsuit on behalf of the class because they believed in medical autonomy and privacy rather than with expectation of receipt of some "special" award or to leverage their own remunerative settlement and by trading on that leverage in the course of negotiations. *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003).

Nor are the enhancement awards disproportionately greater than what many class members are entitled to recover under the terms of the settlement agreement. Indeed courts have noted "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 22

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

the class members whose interests they are appointed to guard." *Stanton*, 327 F.3d at 975, *citing*, *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 720 (E.D.N.Y.1989). Based on the substantial recovery, obtained with the assistance of the named class representatives, on behalf of the class as a whole, it would be unfair to characterize the enhancement awards as "separate peace" with defendants at the expense of the class interest they are entrusted to protect.

**2.      Provisional Certification of the Class Is Appropriate**

Plaintiff respectfully requests that the Court provisionally certify the following class:

> All Kaiser patients for whom HIV tests were batch-ordered, and who were tested for HIV in Washington or Oregon between and including April 16, 2013 and May 6, 2013.

> Excluded from the class are Defendants, Defendants' legal representatives, assignees and successors, the judges assigned to this case and in the *Kelley* case, the judges' staff, and any member of the judges' immediate family.

For the reasons set forth below, provisional certification is appropriate under Rule 23(a) and (b)(3). Provisional certification of a class for settlement purposes permits the parties to provide notice of the proposed settlement to the class, which will inform them of the existence and terms of the proposed settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing.[3]

**A.      Numerosity.**

Numerosity is satisfied if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); Fed.R.Civ.P. 23(a)(1). There is no "magic number." *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673 (W.D. Wash. 2010). However, impractical is not synonymous with impossible, but only refers to "difficulty or inconvenience of joining all

---

[3] Under the Settlement, Kaiser has agreed not to contest class certification for purposes of Settlement approval only. If the court does not approve the Settlement, Kaiser has reserved its right to challenge class certification.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 23

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Here, the potential class members total 6,180. (Declaration of Robert Unitan, MD at p.3 ¶7). The class is self-evidently large and renders the expense and burden of litigating each claim separately, impractical.

### B.    Commonality.

Commonality is satisfied if questions of fact and law are common to the class. Fed.R.Civ.P. 23(a)(2). Rule 23(a)(2) is permissively construed. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1019. Only a single issue common to all members of the class is needed. Here, class members clearly share a common source and operative allegations: the HIV batch-testing protocol implemented by Kaiser was uniformly applied to class members in both Washington and Oregon. Plaintiffs have alleged that in April of 2013, Kaiser implemented a program to test its Oregon and Washington members for HIV once in their lifetime, and began by ordering HIV tests for Northwest region members between the ages of 50 to 65. Plaintiffs allege that Kaiser failed to communicate this new protocol to its members before administering the tests, which deprived them of an opportunity to opt-out of the program and decline the test. Plaintiffs allege that they and the putative class were tested for HIV without their knowledge or consent. For these reasons, proposed class shares sufficient factual commonality to satisfy the minimal requirements of Rule 23(a)(2).

### C.    Typicality

Typicality seeks to assure the representatives are squarely aligned with the interest of the represented group. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 24

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

1  2010). "The typicality requirement looks to whether the claims of the class representatives [are]

2  typical of those of the class, and [is] satisfied when each class member's claim arises from the

3  same course of events, and each class member makes similar legal arguments to prove the

4  defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011),

5  quoting *Rodriguez,* 591 F.3d at 1124 (internal quotation marks omitted). Under the rule's

6  permissive standards, representative claims are "typical" if they are reasonably co-extensive with

7  those of absent class members; they need not be substantially identical. *Hanlon v. Chrysler*

8  *Corp.*, 150 F.3d at 1020. In this instance, the claims of the class representatives are identical to

9  the claims of the class and arise from the same course of events: the HIV batch-testing protocol

10  implemented by Kaiser that Plaintiffs allege resulted in the class being tested for HIV without

11  their knowledge or consent and without the ability to opt-out and decline such testing are

12  substantially similar if not identical for class members in both Washington and Oregon.

13  **D.    Adequacy of Class Counsel.**

14  The representative parties have fairly and adequately protected the interest of the class.

15  Fed.R.Civ. 23(a)(4). There is no suggestion or evidence of any antagonistic or conflicting

16  interest with the unnamed class members. Plaintiffs vigorously prosecuted this case, through

17  qualified counsel, on behalf of the class at significant expense and effort. *Lerwill v. Inflight*

18  *Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) *see also*  (Declaration of Travis Jameson

19  at p.5 ¶14-15; see also Declarations of Brad Moore at p.3 ¶9; Declaration of Linda McPherson at

20  p.2 ¶6; Declaration of Mary Benton at p.2 ¶6; Declaration of Dorinda Otero at p.3 ¶7;

21  Declaration of Barbara Kelley at p.3 ¶7; Declaration of William Pearse at p.3 ¶7; and Declaration

22  of Mark Griffin at p.2 ¶4.)

23

24  PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 25

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

Where certification is being sought in the context of a settlement, courts should take a close examination of the fairness of proposed agreement. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This case is not saddled with reasonable concerns over settlement allocation decisions as distributions are solely determined by uniform, qualitative, factual circumstances consistent with counsel's realistic strength assessments attendant to each of the four distribution matrix groups. All class members are known and being treated equally under terms of the settlement agreement. Consequently there is no conflicting interest by counsel to maximize current funds as the expense of some "future" claimant not presently known. Thus, the prospect for irreparable conflict of interest is absent.

There is no fixed standard for measuring "vigor." Considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1021. The parties entered into the settlement agreement because doing so was in the best interest of the class, as a whole, considering the magnitude of the settlement fund, the cost/benefit analysis and challenges and risks associated with trial and continuing litigation, and the cash award each qualifying class member will receive. This settlement is not a coupon settlement or some "bargain proffered for … approval without benefit of an adversarial investigation." *Amchem*, 117 S.Ct. 2249.

The Settlement Agreement was entered into after conducting meaningful pre-arbitration discovery, investigation and analysis. Nearly 1000 hours was spent, by not less than 5 attorneys, investigating and prosecuting this case. Costs alone exceeded $40,000. (Jameson Dec., Ex. F). Plaintiffs undertook depositions of the key witnesses and company representatives for Kaiser, including the architect of the batch-testing protocol; consulted with nationally recognized experts in the field of hospital administration, medical ethics, and immunodeficiency in additional to

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 26

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

public health agencies and privacy organizations. Focus groups were undertaken and thousands of documents were reviewed and analyzed. Nothing in the record suggests that Plaintiffs were not willing or capable of continuing litigation or trying the case. Rather, a strategic assessment was made to enter into settlement based on the nature and magnitude of the settlement result achieved. Such is the heart and nature of the American adversarial process. (Declaration of Travis Jameson at p.5 ¶¶ 14-15).

### E.    Predominance/Superiority

Class adjudication is warranted as it is "sufficiently cohesive" due to a "common nucleus of facts and potential legal remedies" that dominates the litigation. *Hanlon,* 150 F.3d at 1022 (citing 451 *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) *Id.* The "common nucleus of facts" derives from Defendants' alleged HIV batch-testing practices that were applied ***consistently and uniformly to class members throughout the class period.*** Plaintiffs allege the consistent and uniform practices deprived Plaintiffs and Class Members of notice of the HIV testing and of the ability to consent and/or decline and opt-out of Defendants non-mandatory HIV testing protocol. While the factual or legal underpinnings underlying each Class Member's potential claims may have <u>minor</u> differences, these common issues prevail. *See Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975).

The proposed class action is the superior method of resolving the dispute in comparison to available alternatives. Fed.R.Civ.P. 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir.1996). ***A class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums***. *Local Joint*

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 27

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

1    *Exec. Bd. Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th

2    Cir.2001).  In the present case, it would be highly inefficient for potentially 6,180 class members

3    to file individual cases.  Certification would also provide the class with a viable method of

4    obtaining redress for the individual damages ranging from $310.10 to a maximum of $1,448.48

5    for each class member.  Moreover, because common issues predominate, class certification

6    serves the judicial economy function of Rule 23 class actions. *Valentino,* 97 F.3d at 1234.

7           Consideration of the superiority factors set forth by Rule 23(b)(3) supports the same

8    conclusion.  The first factor requires the Court to consider "the class members' interests in

9    individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P.

10   23(b)(3)(A). Because each individual member could only pursue relatively small claims, "class

11   members have no particular interest in individually controlling the prosecution of separate

12   actions." Fed.R.Civ.P. 23(b)(3)(A); *see also Zinser v. Accufix Research Inst., Inc.,* 253 F.3d

13   1180, 1190 (9th Cir.2001) ("Where damages suffered by each putative class member are not

14   large, this factor weighs in favor of certifying a class action."). When the individual claims of

15   class members are small, the class action "facilitates the spreading of the litigation costs among

16   the numerous injured parties" and encourages recovery for unlawful activity. *See Monterrubio v.*

17   *Best Buy Stores, L.P.*, 291 F.R.D. 443, 451 (E.D. Cal. 2013) citing *In re Warfarin Sodium*

18   *Antitrust Litig.,* 391 F.3d 516, 534 (3d Cir.2004).  Additionally, in the instant action, the class

19   members have the option to "opt-out" of the proposed settlement allowing individuals the

20   opportunity to control the litigation.

21          The second relevant factor under Rule 23(b)(3) is whether, and to what extent, other class

22   members have begun litigation concerning the controversy. Fed.R.Civ.P. 23(b)(3)(B). If a

23   multiplicity of suits will continue through judicial proceedings despite the class action, this factor

24   PLAINTIFF'S MOTION FOR PRELIMINARY
     APPROVAL OF CLASS ACTION SETTLEMENT
     Case No. 3:13-cv-05998-BHS - 28

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

counsels against certification. *Zinser,* 253 F.3d at 1191 (citing 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Prac. & Proc.* § 1780 (2d ed. 1986)). Here, no other class members have begun litigation concerning the present controversy, nor is there any evidence that a multiplicity of suits will continue through judicial proceedings.

The third relevant factor under Rule 23(b)(3) requires the Court to consider "the desirability or undesirability of concentrating the litigation of the claims in a particular forum." When the parties have agreed on a proposed Settlement Agreement, "the desirability of concentrating the litigation in one forum is obvious." *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. at 452 (E.D. Cal. 2013), citing,

*Elkins v. Equitable Life Ins. Co. of Iowa,* No. 96–296–CIV–T–MB, 1998 WL 133741, at 20 (M.D.Fla. Jan. 28, 1998). The parties in this case agreed upon a proposed settlement agreement. For the purpose of approving a settlement, "this forum is as good [as] or better than any other." *Id.* Accordingly, to the extent that this factor is relevant in the context of a proposed settlement, Plaintiffs suggest, and Defendants agree, it is desirable to concentrate the litigation of the claims in this particular forum.

Finally, the Court must consider "the likely difficulties in managing a class action." However, in the context of a settlement, considerations regarding management of the class action are irrelevant because the proposal to the court is to avoid trial through a settlement agreement. *See Amchem,* 521 U.S. at 620, 117 S.Ct. 2231. In light of the above considerations, common questions of law or fact predominate, and a class action is the superior method of resolving the dispute, as established by consideration of the superiority factors, the settlement class satisfies the requirements of Rule 23(b)(3).

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 29

**STRITMATTER KESSLER WHELAN**

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

### 3. The Proposed Notice Program Is Constitutionally Sound

"To protect their rights, the Court must provide class members with the best notice practicable regarding the proposed settlement. Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Kaiser has the names and addresses of every person for whom an HIV test was batch ordered, and who was tested in Oregon or Washington between and including April 16, 2013 and May 6, 2013. Kaiser will provide that information to the Claims Admin, who will send each individual a Notice Packet, which includes the Notice attached as Exhibit B to the Settlement.

The language of the proposed Notice is plain and easily understood. It provides neutral, objective and accurate information about the nature of the Settlement. The notice includes the definition of the Settlement Class, a statement of each Settlement Class member's rights (including the right to opt-out of the Settlement Class or object to the Settlement), a statement of the consequences of remaining in the Settlement Class, an explanation of how Settlement Class members can exclude themselves from the Class or object to the Settlement, a description of how much money a claim member can expect to receive, and the formula through which that distribution amount might change. *See id.* The claim form will be personalized to state the date and place of test for each class member.

Plaintiff submits that the notice program outlined in the Settlement Agreement is the best practicable notice under the circumstances of this case, and will be highly effective.

### 4. This Court Should Schedule a Final Approval Hearing In Accordance with the Following Dates.

The last step in the settlement approval process is a Final Approval Hearing at which time the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the Settlement may explain its terms and conditions, and offer argument in support

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 30

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

of final approval. The Court will determine after the Final Approval Hearing whether the Settlement Agreement should be approved, and whether to enter a final order and judgment under Rule 23(e).

Pursuant to the terms of the Settlement and provided the Court enters the Preliminary Order on or before **March 6, 2015**, the Parties propose the following schedule:

1. Kaiser shall provide class list to Claims Admin on or before **March 23, 2015** - (Entry of Preliminary Order date + 14 days);

2. Claims Admin shall send out notices and establish website on or before **April 6, 2015** - (Entry of Preliminary Order date + 28 days);

3. Plaintiffs to file motion for fees, costs and enhancement awards on or before **April 6, 2015** - (Entry of Preliminary Order date + 30 days);

4. Claims Admin shall send out all reminder notices on or before **May 7, 2015** - (#2 + 30 days);

5. Class members shall opt-out, submit a claim or object to settlement on or before **May 22, 2015** - (#2 + 45 days);

6. Settlement class members shall cure deficient notices on or before **June 8, 2015** – (#5 + 14 days);

7. Kaiser shall challenge claims on or before **June 23, 2015** - (#6 + 14 days);

8. Claims Admin shall resolve challenges and provide distribution list to parties on or before **July 8, 2015** - (#7 + 14 days);

9. Kaiser shall exercise its right to abrogate the Settlement Agreement based on opt-outs on or before **July 23, 2015** - (#8 + 14 days);

10. Motion for Final Approval shall be filed with this Court on or before **August 24, 2015** - (#8 + 45 days);

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 31

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA 98119-4204
Tel: 206-448-1777

11.    Final Approval Hearing to occur on **September 8, 2015** or as soon

thereafter as the Court may accommodate - (#10 + 14 days).

Plaintiff requests that the Court set a date for a hearing on final approval at the Court's

convenience, but not earlier than **September 8, 2015.**

**5.    Conclusion**

Plaintiffs request that this Court: (1) grant preliminary approval of the Settlement; (2)

provisionally certify the proposed settlement class; (3) appoint as class counsel the law firm of

Stritmatter Kessler Whelan; (4) appoint Mary Benton, Linda McPherson, and Dorinda Otero as

representatives of the class; (5) preliminarily approve the award of attorney fees and enhanced

awards; (6) approve the proposed notice plan and class notice forms; (7) appoint KCC LLC to

serve as claims administrator; (8) approve the limited disclosure of health information to the

Claims Admin in the manner described herein; and (9) schedule the final fairness hearing and

related dates.


DATED THIS 2nd day of February, 2015


STRITMATTER KESSLER WHELAN



By:  _/s/ R. Travis Jameson_
Paul Stritmatter, WSBA#4532
Brad Moore, WSBA#21802
R. Travis Jameson, WSBA#45715
Counsel for Plaintiffs

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 32

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777

STRITMATTER KESSLER WHELAN

CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

I hereby certify under the laws of the United States of America that on the 2nd day of February, 2015, I filed this document through CM/ECF, causing a true and correct copy of the foregoing to be electronically served upon the following:

Matthew  Kalmanson          tsb@hartwagner.com
Troy Bundy                          mjk@hartwagner.com
Hart Wagner
1000 SW Broadway, Ste. 2000
Portland, OR  97205-3070


By:   /s/ R. Travis Jameson
R. Travis Jameson, WSBA # 45715

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-05998-BHS - 33

STRITMATTER KESSLER WHELAN

200 Second Avenue West
Seattle, WA  98119-4204
Tel: 206-448-1777